UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE: ORAL SODIUM PHOSPHATE SOLUTION-BASED PRODUCTS LIABILITY LITIGATION | Master File No. 1:09-SP-80000 MDL No. 2066 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | The Honorable Ann Aldrich U.S. DISTRICT JUDGE Northern District of Ohio |

**REPLY MEMORANDUM IN SUPPORT OF APPLICATION FOR APPOINTMENT OF STEPHEN J. FOLEY AS LEAD COUNSEL AND MESSRS. DASKAL, FOLEY, LASZLO, AND SZERLAG AS MEMBERS OF PLAINTIFFS EXECUTIVE COMMITTEE (PEC) TO MANAGE THIS MDL ON BEHALF OF ALL PLAINITFFS, AND APPLICATION FOR ESTABLISHMENT OF A STEERING COMMITTEE TO ADVISE THE PEC, FILED ON BEHALF OF ALL PLAINTIFFS REPRESENTED BY THE FOLLOWING LAW FIRMS:**

1. Foley & Mansfield, PLLP
2. Laszlo & Associates, LLC
3. Lynch Daskal Emery LLP
4. Pritzker Olsen, P.A.
5. Cooley Manion & Jones LLP
6. Gentry Locke Rakes & Moore, LLP
7. Jeffrey D. DeCarlo, P.A.
8. Jeffrey L. Shaw, P.C.
9. Martin & Helms, P.C.
10. Snyder & Wenner
11. Touhy, Touhy, Buehler & Williams, LLP
12. O'Rourke & Moody
13. Whiting Law Group, Ltd.
14. Tauber, Westland & Bennett P.C.

### I.    INTRODUCTION

This Reply Memorandum is submitted by the undersigned fourteen law firms, (hereafter the Majority Group) to respond to the allegations and arguments contained in the Brief of the Rheingold Group and the Affidavit of Paul Rheingold submitted in support of same on August

13, 2009. As we will show by reference to the record developed to date in the OSPS litigation against Fleet, Rheingold's allegations, claims, arguments, and false innuendo in opposition to our application for appointment of Messrs. Daskal, Foley, Laszlo and Szerlag to manage this MDL are without merit.

## II. The Rheingold Group Incorrectly Claims to Have Support of The Majority of Plaintiffs' Counsel With OSPS Cases.

The Rheingold Group's brief repeatedly seeks to give the impression that its application represents the majority view, but that is belied by the fact that only five firms signed onto Rheingold's petition, while 14 law firms (almost 200% more) signed onto our application. The 14 law firms who signed our petition include not less than four experienced trial lawyers who have devoted a major part of their time over the past four years to representing plaintiffs in OSPS litigation. In addition, the 14 firms who signed our application include prominent members of the plaintiffs' bar from across the country, including the firms of Snyder & Wenner (Arizona), Gentry, Locke, Rakes & Moore (Virginia); Pritzker Olsen (Minnesota), Martin & Williams (Alabama) and Touhy, Touhy Buehler & Williams (Illinois), Tauber Westland & Bennett (Indiana), among others.

For example, Mr. Wenner of Snyder & Wenner is one of the foremost authorities on jury selection and jury bias in the plaintiffs' bar. He is the co-creator of American Association of Justice's award winning 'Overcoming Jury Bias' Seminar and College that have been attended by thousands of plaintiffs' lawyers throughout the country. His website http//www.Jurybias.com reflects his passion and commitment to plaintiffs' causes. He worked closely with Mr. Foley and Daskal in preparing for the *Hays v. C.B. Fleet* trial in California in 2007, and is co-counsel with Mr. Foley in the Arizona cases filed against Fleet.

2

The firm of Touhy, Touhy, Buehler & Williams has over 30 years of experience exclusively representing plaintiffs in products liability and class action cases. They have worked closely with Foley & Mansfield (F&M) to develop their clients' cases against Fleet. Gentry Locke Rakes & Moore is one of the leading plaintiffs' personal injury firms in Virginia. It has a well-earned reputation as a champion of plaintiffs in products liability or other complex tort litigation.  The firm sought out Mr. Foley to assist and advise it when it first began to represent persons injured by Fleet Phospho-soda, and they fully support this Application.

Pritzker Olsen is one of the upper Midwest's premier plaintiffs' law firms, and is a national leader in food safety litigation on behalf of plaintiffs. The firm has broad experience in successfully handling complex product liability cases, including a leading role on the plaintiffs' PSC in the Yamaha Rhino MDL litigation pending in the Western District of Kentucky.  Fred Pritzker began consulting with F&M over two years ago when his firm first began to represent people injured by Fleet Phospho-soda, and was pleased to have F&M associate with him to pursue claims against Fleet.

Counting heads, it is clear our group far outnumbers the Rheingold Group. Thus, any assertion or implication they are numerically the majority of plaintiff law firms is simply wrong.

### III.   The Rheingold Group Lacks An Understanding of the Basic Facts, and Lacks any Significant Experience in Pursuing Claims against Fleet.

The Rheingold Application is incorrect on one of the most basic facts about FPS. At page two of their brief they allege FPS was first used as "an over the counter laxative for more than 140 years."  This would mean it came on the market before 1869. However, if Fleet can be assumed to know its own history, they (and we) state that "Phospho-soda … has been

manufactured and marketed since 1893." *See* Fleet's Litigation Backgrounder, at 1, filed August 13, 2009 (Document No. 26); Plaintiffs' Case Status Brief at 1[1] (Document No. 24).

This lack of accuracy as to a simple historical fact is telling. It shows that the Rheingold Group's alleged expertise as to this litigation is mere hyperbole. Further evidence of the lack of experience, and overstating its experience, is found in their claims that they conducted "extensive discovery against Fleet" and worked with a "panel of experts" which are now "used by everyone in the litigation".

As to extensive discovery, Rheingold took a total of two (2) depositions of Fleet employees in the handful of OSPS case they had before this MDL was created. We have taken over 25 depositions of Fleet employees, experts, consultants, and generic OSPS manufacturers in the more than 120 cases we have prosecuted and resolved with Fleet *before* this MDL was filed.

Substantively, the depositions the Rheingold firm did take are not overly helpful to the plaintiffs' case. They are very general, and fail to provide useful testimony for trial. While we recognize this criticism is somewhat subjective, we would ask the Court to review their depositions in comparison to the ones we did of the same witnesses to assess the quality of the work. We have examined the Fleet witnesses on literally hundreds of their internal documents as we created the cross-examination testimony necessary for trial.

Secondly, the Rheingold group alleges they reviewed "thousands of internal Fleet documents". Docket Document 20 at 2. We have collected and analyzed approximately 1 million pages of documents from Fleet and the generic OSPS manufacturers. We have created a document database which is word searchable. We have pursued Fleet when it failed to provide responsive and relevant documents or tried to hide documents under false claims of privilege.

---

[1] The Rheingold Group's proposed pretrial order no 2 (Docket Document No. 23, filed Aug. 13, 2009) also contains a major error. It states that this MDL is "part of a nationwide litigation involving implantable defibrillators and pacemakers" See Document No. 23, page 1, lines 3 and 4.

We have deposed Fleet's experts. We have prepared motions in limine on issues common to all the cases pertaining to Fleet's defenses.  The Rheingold Group, however, cannot point to a single substantive discovery motion they filed, a single motion in limine they filed, or a single deposition of a Fleet expert they have taken.

As to the claim they have worked with a "panel of experts," and that "they engaged and retained the experts who are now used by most every attorney representing plaintiffs against Fleet and developed the theory of liability against Fleet that is now used by every firm in this litigation" (Document No. 20 at 11) – these claims are simply false.

As to experts, Rheingold retained two experts in their first case, Dr. Jai Radhakrishan and Dr. Suzanne Parisian. Dr. Radhakrishan is a very able nephrologist who was the eighth co-author, out of nine, of Dr. Markowitz's seminal article in *Human Pathology*.

Dr. Radhakrishan has not, to our knowledge, been retained again in this litigation since that initial retention by Rheingold. To our knowledge, he has never testified on behalf of any plaintiff. We have instead retained Dr. Markowitz, the lead author, and a renal pathologist, who testified at trial for us in the *Hays* case, and who has consulted on numerous other cases at our request.  As a nephrology expert, among others, we have retained Dr. Michael Emmett, chief of internal medicine at Baylor Medical Center in Dallas.  Neither of these experts has ever been retained by anyone from the Rheingold Group.

Dr Parisian was first retained by Rheingold, and we do not dispute that fact. Dr. Parisian is a fine expert. Subsequent to her first retention by Mr. Valet, we provided her with far more additional materials to review and analyze than Rheingold made available to her, which data she has incorporated into later reports prepared in our cases. However, we have also added Dr.

5

Cheryl Blume as our principal expert in the same areas as Dr. Parisian. Dr. Blume's thorough and comprehensive report and addendum have been provided to Fleet.

As to all the experts we have developed in this litigation, including Dr. Markowitz, Dr. Blume, Dr. Mandel, Mr. Larry Londre, (a marketing expert), Dr. Emmett, Dr. Cohen, Dr. Wolfe, and others, we can represent to the Court that none of those individuals have ever been retained by or prepared reports for any members of the Rheingold Group in OSPS litigation. The claim that Rheingold developed the "panel of experts" all plaintiffs now use is simply untrue. Dr. Parisian alone is not a "panel".  But even she was not wholly "developed" by the Rheingold Group. The data from Fleet we have been able to provide her due to our far more extensive work has greatly augmented her early views.

The claim that Rheingold "developed the theory of liability" which all plaintiffs now use in this litigation is also false. As has been pointed out, the first five lawsuits against Fleet were filed by Daskal and his partner, Jim Lynch. The theories of liability, and the work done to develop all the facts to support those theories, have been developed and refined by our group, and principally by the work of Daskal, Foley, Laszlo and Szerlag, over the last four years.

### IV. The Rheingold Group Claim that They Reached Out to All Plaintiffs on the Service List is Untrue.

The Rheingold Group claim that they were the first to reach out to all firms to try to develop a leadership structure is simply untrue.  They never contacted Mr. Daskal, and in fact failed to return his email to them when he reached out to them. *See* Declaration of Bernard Daskal, August 17, 2009, ¶ 4 and Exhibit A to same.  Mr. Cory contacted us shortly after Fleet filed its MDL motion and asked to associate with us. We welcomed him, and met with him to discuss the litigation as well as a structure for leadership of the MDL if it was granted. Mr. Foley then contacted Hunter Shkolnik of the Rheingold firm, and sent him a draft of a proposed

6

organizational structure which reflected discussions between our group and Mr. Cory. Foley also reached out to Mark Tate. Shkolnik did not respond to us prior to the filing of the Rheingold Group's original application on July 9, 2009.

After Pre-Trial Order No. 1 was entered, on July 21, 2009, Mr. Foley called Mr. Climaco to ask to set up a meeting among with the Rheingold Group in an effort to work out a compromise on leadership in this MDL. Mr. Climaco suggested it be at his office as he was interim Liaison Counsel. We agreed, and on July 27, 2009 we met in person with some members of the Rheingold Group while others attended by telephone.

While we disagree with much of Mr. Rheingold's characterization of the discussions at that meeting,[2] we agree that an impasse was reached after they rejected our compromise proposal of parity on the PEC and co-lead counsel, with Mr. Climaco having the tie- breaking vote in event of deadlock. We offered this latter term in response to their expressed concern that there might be a deadlock among the PEC if it there were an equal number of members. At all times we have gone the "extra mile" to try to reach consensus and avoid internecine fighting that distracts from the pursuit of the plaintiffs' cases.

**V.     For Leadership in this MDL to be Effective, it Must Presently Have the Ability to Recognize Fleet's Misrepresentations of past Discovery Disputes, the Regulatory History of FPS, and the Applicable Science. Only Our Group Has That Ability Now.**

It must not be lost that the focus of this MDL for plaintiffs is to successfully prosecute the claims of all of the plaintiffs. As this litigation has been ongoing for a number of years, the plaintiffs' leadership must be intimately familiar with past discovery issues, the regulatory history of FPS, and the current state of scientific knowledge. We are the only group who possess this knowledge right now. Without this knowledge base, plaintiffs will not have an effective

---

[2] In our view, it is pointless to engage in a "he said – she said" debate over what each person said at the meeting. Name calling and unfounded personal attacks have no place in the practice of law.

advocate who can challenge and rebut any of the false or misleading statements of Fleet. We will point out three (3) immediate points about Fleet's Background Submission (Document No. 26) which are not accurate nor a fair reflection of the record.

First, Fleet misstates the regulatory history of FPS. Fleet claims that the FDA "did not specify the dose for physician use as a bowel cleanser." Document No. 26 at 1. This position is not supported by the record. In both 1994 and again in 1998, in the Federal Register, the FDA specifically stated that the dose used for bowel cleansing was 45-mL. "The purgative dose, or dose used for colonoscopy, is 45 mL". *See* Fed. Reg. Vol. 59, No. 62, page 15139 (March 31, 1994) and Fed Reg. Vol. 63, No 98, page 27886 (May 21, 1998).

Fleet's internal documents show Fleet was well aware of the FDA's position not later than May of 1998. Sarah Post, Fleet's senior vice president, wrote the following to Doug Bellaire, the president of Fleet: "The FDA has only approved one daily 45-ml dose of Phospho-soda as a bowel preparation. Therefore, we cannot promote any regimen that requires two doses in the same day." *See* Memorandum from Sarah Post to Doug Bellaire, May 7, 1998.

Three years later, on July 19, 2001, the FDA wrote a letter to Braintree Laboratories, a Fleet competitor, denying its Citizen Petition to make Fleet's FPS prescription only or add a block box warning. In its letter, the FDA states: "The recommended dose for sodium phosphates oral solution … for use as part of a bowel cleansing regimen is 20 to 45 mL as a single daily dose." *See* FDA Letter from Dennis Baker, Associate Commissioner for Regulatory Affairs, to Thomas Henteleff, July 19, 2001, at 2, submitted as Exhibit A.

Second, Fleet misstates the state of the art of science by claiming at page 6 of its brief that "the scientific consensus of those who have investigated the question is that adverse events associated with use of FPS as a bowel cleanser have been very rare." The FDA itself stated in

8

December of 2008 that: "Although the true incidence of acute phosphate nephropathy is unknown, it may occur in up to 1 in 1000 patients who receive OSPS products and is probably under-recognized." FDA letter to Natasha Leskovsek, Esq., at 2-3, December 8, 2008, submitted as Exhibit B. *See also* Hurst, et al., "Association of Oral Sodium Phosphate Purgative use with Acute Kidney Injury", *J. Am Soc Nephr* 18, __ (Published October 32, 2007). The spin Fleet places on this supposed consensus fails to mention that the "scientific community" it relies upon consists almost entirely of paid Fleet consultants, such as its expert witnesses, Dr. Judith Jones and Dr. David Balaban, among others.

Third, Fleet downplays its past discovery abuse and prior adverse court rulings. Fleet claims that in the *Burk* case in West Virginia it was merely required to produce "12 previously withheld documents". *See* Document No. 26 at 20. Notably absent from Fleet's discussion of what happened in *Burk* is any reference to the Court's finding that it was the "defendants that have been disobedient of the Court's orders and abusing the rules of the court…. There's no doubt in my mind there's a failure to obey the first two orders." *Burk v C.B. Fleet*, *Inc.*, Transcript of Proceedings, January 5, 2009, at 23, line 23-25; and 24, line 15-16. On the issue of Fleet's assertions of privilege, the Court held that "defendant was not substantially justified in claiming the attorney client privilege with respect to six of the 25 documents named by plaintiff", and the Court sanctioned Fleet $10,000. *Id.* at 28, lines 19-24. The Court went on to order new privilege logs, and all other documents to which Fleet claimed privilege to be submitted to the Court for *in camera* review. The Court stated that if it found Fleet "continued to make frivolous assertions of the privilege" it would sanction Fleet per document, and the sanctions would increase with each document. *See Id.* at 29, lines 9-10, and lines 12-16. (The

9

January 5, 2009 transcript in *Burk* is submitted as Exhibit C).  The *Burk* case resolved shortly after this hearing, and before the Court ruled on any other documents.

The point is that Lead Counsel needs to be in a position to know what has already happened, and not waste time researching each and every assertion by Fleet as to what has or has not transpired in the past.  The Rheingold Group lacks any knowledge of what has transpired over the last few years other than what they have learned from the briefs and exhibits we have filed. Indeed, the Rheingold Group offered no significant input to Plaintiffs' Case Status Brief filed on August 13, 2009  (Document No. 24) – although they did ask that the undersigned lawyers' names would not appear as the authors of the Brief and it be signed only by Interim Liaison Counsel. As it was not a point worth fighting over, we agreed.

**VI.     Rheingold's Objections to Foley as Lead Counsel are Without Merit, and Contrary to the Best Interests of the Plaintiffs**.

Paul Rheingold filed an affidavit objecting to Mr. Foley as Lead Counsel for plaintiffs premised on speculation and innuendo. The objections are so bizarre as to barely warrant a reply. However, we reply in order to set the record straight, and to avoid the prejudice to our clients and all other plaintiffs if Rheingold's objection is entertained.

Foley has in the past represented AIG or been retained to defend its insureds. It is also true that there is no conflict of interest, and even AIG never has alleged that one exists.  The record of this litigation over the last four years shows that Foley has exemplified all that is right about the term "zealous advocate" for his clients' interests. His work and skill have played a large part in all of the success the plaintiffs with FPS-induced injuries have enjoyed in this litigation.  His work has increased the value of the cases, and his work has been instrumental in refining and sharpening the plaintiffs' case against Fleet.

The innuendo of Rheingold that Foley might compromise his clients' interests to satisfy AIG is not only defamatory, but it is demonstrably false. AIG at one time tried to intimidate Foley into withdrawing from a case by use of economic threats against his firm.[3] This involved an attempt by AIG to get other insurer clients of F&M to fire the firm for pursuing plaintiffs cases against Fleet, an AIG insured. This occurred shortly before trial was to commence in the *Hays* case in California. In response, Foley filed a motion against Fleet and AIG for terminating sanctions in the *Hays* case. The *Hays* case then proceeded to trial while the motion was under submission. While the amount of the settlement reached in *Hays* after trial began is confidential, we can report that it was by far the largest settlement up to that date in this litigation. Foley has since continued to lead the litigation against Fleet.

AIG and Fleet would like nothing better than to have Foley excluded from leadership of this MDL on behalf of plaintiffs. It would give them what they have not been able to achieve by threats or other means. As AIG's counsel said to Mr. Daskal, one reason Fleet filed the MDL was in the hope that Foley would not want to participate since his firm does also do defense work. *See* Declaration of Bernard Daskal, August 17, 2009, ¶ 3.

The undersigned have, for the most part, spent our entire professional careers working on behalf of plaintiffs in tort litigation. We are proud to be associated with Mr. Foley in this litigation against Fleet. We ask that this Court confirm his appointment as Lead Counsel for Plaintiffs, and allow this MDL to be managed by Messrs. Daskal, Foley, Lazlo, and Szerlag as a majority of the PEC.

---

[3] We can provide a copy of the motion to the Court if it thinks it necessary. However, it is not relevant to the litigation against Fleet now, and it was an ugly incident. We apologize for bringing it up, as it has never been repeated. It is not a factor impacting the current relationship of us as plaintiffs and Fleet as a defendant. We mention it only to rebut the false implications and innuendo of the Rheingold affidavit.

11

### VII. Conclusion

We respectfully request that the Court deny the Rheingold Group application, grant our application, approve the PEC slate we have nominated, consisting of Messrs. Daskal, Foley, Lazlo and Szerlag, and approve Mr. Foley as Lead Counsel for Plaintiffs in this MDL.

Respectfully submitted this 17th day of August, 2009, by the Undersigned Counsel for Plaintiffs.

**/s/Stephen J. Foley**_____
Stephen J. Foley
Foley & Mansfield PLLP
250 Marquette Ave
Suite 1200
Minneapolis, MN 55401
Tel:  (612) 338-8788
Fax:  (612) 338-8690
sfoley@foleymansfield.com

**/s/Theodore E. Laszlo, Jr.**_____
Theodore E. Laszlo, Jr.
Laszlo & Associates LLC
Chagrin Highlands
2000 Auburn Drive
Suite 200
Cleveland, OH 44122
Tel:  (216)378-7545
Fax:  (216)378-7505
tlaszlo@laszlolaw.com

**/s/Bernard Daskal**_____
Bernard Daskal
Lynch Daskal Emery LLP
264 West 40th Street, 18th Floor
New York, NY  10018
Tel:  (212) 710-0053
Fax: (212) 302-2210
daskal@lawlynch.com

**/s/David J. Szerlag**_____
David J. Szerlag
Pritzker Olsen, P.A.
Plaza VII, Suite 2950
45 South Seventh Street
Minneapolis, MN 55402-1652
Tel: (612) 338-0202
Fax: (612) 338-0104
dszerlag@gmail.com

**/s/John T. Hugo**_____
John T. Hugo
Cooley Manion Jones LLP
21 Custom House Street
Boston, MA 02110-3536
Tel: (617)737-3100
Fax: (617) 737-3113
jhugo@cmjlaw.com

**/s/Anthony M. Russell**_____
Anthony M. Russell
Gentry Locke Rakes & Moore, LLP
10 Franklin Road, S.E.
SunTrust Plaza
Roanoke, VA 24011
Tel: (540) 983-9300
Fax: (540) 983-9400
anthony_russell@gentrylocke.com

**/s/Jeffrey D. DeCarlo**
Jeffrey D. DeCarlo
Jeffrey D. DeCarlo, P.A.
Attorney At Law
The Atrium
4500 Biscayne Blvd., Suite 201
Miami, Florida 33137
Tel.:  (305) 572-0065
Fax.: (305) 604-9945
jdecarlo7@gmail.com

**/s/Jeffrey L. Shaw**
Jeffrey L. Shaw
Jeffrey L. Shaw, P.C.
Promenade II Building
1230 Peachtree Street, Suite 3750
Atlanta, GA 30309
Tel: (404)995-8808 x102
Fax: (404) 995-8899
jeffshaw@jlslaw.com

**/s/Clay Martin**
Clay Martin
Martin & Helms, P.C.
401 Holmes Avenue, NE
Suite C
Huntsville, Alabama 35804
Tel: (256) 539-1990
Fax: (256) 539-1949
martin@martinhelms.com

**/s/David A. Wenner**
David A. Wenner
Snyder & Wenner
2200 East Camelback Road
Suite 213
Phoenix, AZ 85016
Tel:  (602) 714-1701
Fax:  (602) 381-8997
david@jurybias.com

**/s/Daniel K. Touhy**
Daniel K. Touhy
Touhy, Touhy, Buehler & Williams, LLP
55 West Wacker Drive
Suite 1400
Chicago, Illinois 60601
Tel: (312) 372-2209
Fax: (312) 456-7766
dtouhy@touhylaw.com

**/s/Michael J. O'Rourke**
Michael J. O'Rourke
O'Rourke & Moody
55 W. Wacker Drive, Suite 1400
Chicago, IL 60601
Tel: (312) 849-2020
Fax: (312) 849-2021
morourke@orourkeandmoody.com

**/s/Timothy M. Whiting**
Timothy M. Whiting
Whiting Law Group, Ltd.
55 West Wacker Drive
Suite 2300
Chicago, Illinois 60601
Tel: (312) 372-1655
twhiting@wlglaw.net

**/s/Jack A. Kramer**
Jack A. Kramer
Tauber Westland & Bennett P.C.
1415 Eagle Ridge Drive
Schererville, Indiana 46375
Tel: (219)865-8400
Fax: (219)865-8484
jkramer@twblaw.com

## Certificate of Service

I hereby certify that on August 17, 2009 a true copy of the foregoing was filed electronically. Notice of this filing was sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM / ECF system.

                Respectfully submitted,

                */s/ John R. Climaco*
                **Interim Liaison Counsel for Plaintiffs**