1          UNITED STATES OF AMERICA
      FOR THE NORTHERN DISTRICT OF OHIO
2               EASTERN DIVISION

3                 - - - - -

4

5

6

7  ORAL SODIUM PHOSPHATE            )
   SOLUTION-BASED PRODUCTS          ) Case No. 09SP80000
8  LIABILITY ACTION                 )

9

10

11

12                 - - - - -

13

14

15    TRANSCRIPT OF PROCEEDINGS HAD BEFORE THE HONORABLE

16     JUDGE ANN ALDRICH, JUDGE OF SAID COURT,

17        ON THURSDAY, AUGUST 20TH, 2009,

18       COMMENCING AT 1:30 O'CLOCK P.M.

19

20                 - - - - -

21

22  Court Reporter:            GEORGE J. STAIDUHAR
                              801 W. SUPERIOR AVE.,
23                            SUITE 7-184
                              CLEVELAND, OHIO 44113
24                            (216) 357-7128

25                 - - - - -

1               P R O C E E D I N G S

2               (Case called.)

3               MR. CLIMACO:  Good afternoon, your Honor.

4               THE COURT:  Let me thank you all for being

5    here and just make sure that everyone who is here has

6    signed the sign-in sheet.  If anyone missed signing in,

7    we will be sure that before you leave, that you do sign

8    it.

9               Initially, let's see, I need to remind the

10   liaison counsel that the Court wants an electronic

11   contact list of all the attorneys on each side.  I

12   think we have a list, but I am not sure if we have all of

13   them.

14              MR. CLIMACO:  We have ours, your Honor.

15              THE COURT:  Thank you, Mr. Climaco.

16              MR. LANHAM:  Sam Lanham from Maine.  We

17   cannot hear anything.

18              THE COURT:  Can you hear anything now?

19              MR. LANHAM:  Still cannot hear.

20              (Pause.)

21              THE COURT:  If you can't hear me now, just

22   raise your hand.  All right.

23              (Laughter.)

24              THE COURT:  If you didn't hear, what I

25   suggested was anyone who didn't sign the sign-in sheet be

1    sure that you sign it before you leave, and my clerks

2    will be available for you to sign in, and then I was

3    reminding the liaison counsel that I want an electronic

4    contact list of all the attorneys on each side.

5                    I think Mr. Climaco provided —

6                    MR. CLIMACO:  Yes, your Honor, we did.

7                    MR. SNYDER:  And, your Honor, Mike Snyder.

8    We also just submitted ours as well on behalf of the

9    defense so both are in.

10                   THE COURT:  Thank you.

11                   MR. SNYDER:  Thank you, your Honor.

12                   THE COURT:  I think initially we should

13   start with the things with respect to which everyone is

14   agreed; that I am going to be appointing a special

15   master, David Cohen.  Mr. Cohen is right there, and I

16   will be putting out the order appointing him, and the

17   indication from both sides was that no one objected to my

18   appointing Mr. Cohen.

19                   He has done a considerable amount of work

20   for other judges on MDL cases.  He clerked for me in the

21   early '90s, and he has been — has made great progress

22   ever since.  And also, I will introduce you to my clerk,

23   Alex Frondorf, who will be the law clerk that is also

24   involved with this case.

25                   And I had appointed Mr. Climaco as the

1    interim Plaintiffs' liaison counsel, and I will now
2    make that a permanent appointment for the rest of this
3    case.
4              MR. CLIMACO:  Thank you, your Honor.
5              THE COURT:  And if I can then move on
6    to —
7              MR. CLIMACO:  May I raise a matter as to
8    Mr. Cohen?
9              THE COURT:  You may.
10             MR. CLIMACO:  It is the Plaintiffs' position
11   we would like to see Mr. Cohen have the authority and
12   responsibility and follow the model that was first
13   established in front of Judge Kathleen O'Malley in the
14   Selzer case and is now being utilized in the welding fume
15   litigate.
16             I am liaison counsel in the welding fume.  I
17   was with one of co-lead in Selzer, and I want to
18   represent to the Court and I know the great faith and
19   respect you have that both of those cases moved
20   expeditiously, not only because of the hard work of
21   Judge O'Malley and her staff, but we are talking about a
22   voluminous amount of litigation, and much of it, all
23   parties and all counsel were helped and have the greatest
24   respect for Mr. Cohen.
25             THE COURT:  Thank you.  I think that's one

1   of the reasons I was pleased that no one objected to me

2   appointing him as a special master, because I know from

3   the work that he did with me, that we both moved

4   expeditiously, and I want to see these cases moved as

5   quickly and fairly as is possible.

6               The defense had as co-lead counsel

7   Nina Gusik of Pepper Hamilton in Philadelphia and Earl

8   Gunn of the Weinberg Wheeler firm in Atlanta.

9               MR. GUNN:  Yes, your Honor.  I am Billy Gunn

10  and Ms. Nina Gusik is not able to be here today because

11  she is taking her daughter to college, and I will have to

12  leave early because I have a court order to be in

13  Florida.

14              THE COURT:  All right.  And we now then have

15  some issues here with respect to — well, one other

16  question that I have with respect to the defense:  It has

17  been indicated that there may be some generic

18  manufacturers who may at some point get to be defendants

19  in this case.

20              Do we need to include any lawyers from —

21  who are representing other defendants than Fleet?

22  Perhaps you can speak to that.

23              MR. GUNN:  We haven't seen anything in

24  response to that motion that was filed, and I believe we

25  would be opposing expanding this litigation.  This is

 1  fairly well developed litigation, and when it is

 2  appropriate, I will address it, but our goal is to

 3  resolve this litigation; not litigate it.

 4          THE COURT:  I am very pleased to hear

 5  that.

 6          MR. GUNN:  Well, yes.

 7          MR. LASZLO:  Your Honor, if I may,

 8  Theodore Laszlo.  I am the attorney of this group of

 9  Plaintiffs' lawyers who has handled some of these generic

10  cases.

11          There is one pending in the Southern

12  District that we have tried to move into this because

13  this is the OSPS MDL, not just the Fleet MDL but the OSPS

14  MDL.

15          We understand that the defendants in that

16  case, Unico, Boeing and CVS, will object to the transfer.

17  Their papers were due, I believe, today, and we will

18  address that.  Those defendants are represented by the

19  Reminger office in Cincinnati.  So I would say if the

20  Panel decides to include the OSPS generic defendants,

21  they may, indeed, want that voice on the defense side.

22          THE COURT:  But at this point in time, no

23  one thinks we should take any particular action.

24          MR. LASZLO:  Not at this time, your

25  Honor.

1          THE COURT:  Or just aware of what's possibly

2    out there.

3          MR. LASZLO:  Yes.

4          THE COURT:  And I think it will depend a

5    great deal on the extent to which some of those cases

6    litigate.  But I will listen to both sides when, and if

7    we — that issue comes up, but I don't think there is

8    anything based on what you both said, there isn't

9    anything we need to do right at this point in time other

10   than whatever the MDL panel may do.

11         MR. LASZLO:  Agreed, your Honor.

12         THE COURT:  Now, with respect to Plaintiffs,

13   we have Mr. Climaco as their liaison.  We seem to have

14   two groups who have met, I believe, at least three times

15   in an effort to pick their lead counsel, and I would like

16   to ask:  Do you need more time to provide the Court with

17   your choices, or are you telling me now that even if you

18   keep on meeting any more, you are not going to make any

19   more progress.

20         Mr. Climaco?

21         MR. CLIMACO:  Your Honor, John Climaco, and

22   I appreciate the respect you showed me by affording me

23   the interim and appointing me lead.  As the record will

24   show, I requested and filed an application at the request

25   of Paul Rheingold, Mark Tate, and some of my other

8

1       friends who I worked with in the past.  I did not know

2       the attorneys that have been led by Steve Foley, but I

3       have come to know all the attorneys.

4               As a result of talking with them on the

5       telephone, in meeting them in my office on two occasions,

6       I have made an effort to have them joined together, and

7       there are some issues that have separated them.  They

8       all — I am just literally amazed, your Honor, there is a

9       lot more work to be done in this case.

10              But the breadth, knowledge, and the depth of

11      knowledge of the attorneys who have litigated this case

12      to date is huge, and I have great respect for them.  I

13      attempted to reach an agreement with them when they were

14      in my office for lunch a few weeks ago, and today we

15      had been meeting in my office as a group from about

16      11 o'clock.

17              I met last night with Mr. Foley, Mr. Laszlo,

18      and some of the others.  I met at 8 o'clock this morning

19      with Mr. Shkolnik and Mr. Paul Rheingold, and after

20      everyone — and I should take a moment, this is Dawn

21      Chmielewski working with us, my partner John Peca and

22      Gwen Hennessy are liaison.  John is also a chef, and he

23      cooked lunch.  And after lunch, it was quite obvious that

24      we weren't getting anywhere.

25              So I walked in, and I shut the door, and I

1     said "ladies and gentlemen, this afternoon I am going to

2     give my recommendation to the Judge.  I believe I have a

3     responsibility, but I am going to walk out of here, shut

4     the door, and if you have fighting to do, do it right

5     here, and let's get it over with and reach an agreement."

6              It appeared from when I walked in and what I

7     heard that in many ways they were closer to a resolution

8     than I thought they might be, but at this time, they do

9     not have one.

10             My recommendation — and I have told all of

11    them this before — is there be two co-lead counsel, and

12    that is this gentleman, who I would like to introduce you

13    to.

14             MR. SHKOLNIK:  Good afternoon, your Honor,

15    Hunter Shkolnik.

16             MR. CLIMACO:  And he is Paul Rheingold's

17    partner and Steve Foley of Foley and Mansfield.

18             MR. FOLEY:  Good afternoon.

19             THE COURT:  Afternoon.

20             MR. CLIMACO:  And now that you have

21    appointed me, your Honor, I will continue to act — one

22    of the early discussions was, well, if we have two, even

23    if there is some disagreement, which I never anticipate

24    there will be, Climaco can help break the tie, and I am

25    willing to do that.  I have the utmost respect for these

10

1   two attorneys.  Agreement can't be reached.

2              That's my recommendation, and there are

3   enough good lawyers that once the co-lead are in place a

4   Plaintiffs steering committee can be appointed, and we

5   can work through this case.

6              With all that said and on the record, I

7   think it would be useful, your Honor, to let me keep

8   trying and give us a little more time, and I have told

9   them I was going to ask for that.  And if we were not

10  successful, I also told them that I am sure the Court

11  will make its own decision, and that might be two

12  co-leads, three co-leads, one co-lead, but it will be the

13  Court's decision.

14             And I said I know the Court would prefer

15  that all of you make a decision.  But they are — the

16  reason they are good lawyers because they are aggressive,

17  they know what they are doing, and everyone wants to be

18  boss.

19             Thank you.

20             THE COURT:  Well, I did notice there were

21  three lawyers that are on both — both these groups,

22  either on the executive committee or the steering

23  committee, and that is Mr. DeCarlo, Bernard Daskal, and

24  David Szerlag.  So there has to be the potential for some

25  agreement as to — for you to work that out, but I think

1  I am of the same mind here perhaps as Mr. Climaco and

2  would suggest that if you can work it out so the

3  Plaintiffs can choose their own lead counsel with some

4  agreement and with members of their executive committee

5  and the steering committee, I would prefer to have it

6  done that way.

7            So I will give you and the group until

8  August 31st to get back to me.  If you don't have your

9  members, people selected, then the Court will proceed

10 very promptly to choose.

11            MR. CLIMACO:  Thank you, your Honor.

12            THE COURT:  Well, I will choose counsel, and

13 for the executive committee, I think that by that time

14 they should be able to sort out the steering committee.

15            MR. CLIMACO:  (Nodding affirmatively.)

16            THE COURT:  Now, if there is anyone that

17 thinks I am missing something and want to comment on this

18 procedure, the gentlemen sitting across the room,

19 Mr. Climaco —

20            MR. CLIMACO:  Yes.  No, Mr. Tate —

21            THE COURT:  It appeared to me he wanted to

22 be saying something.

23            MR. CLIMACO:  No.  Mr. Tate has decided he

24 has nothing to say at this time.

25            (Laughter.)

1        MR. TATE:  Much to the chagrin of the entire

2   courtroom.

3        MR. CLIMACO:  And there are a few others

4   that I had hesitation that you might be hearing from, but

5   we have silence.

6        THE COURT:  Please don't both talk at the

7   same time because the court reporter can't get down what

8   both of you are saying.

9        MR. TATE:  I have nothing to add, and

10  Mr. Climaco said everything.  And the Court expressed its

11  opinion, and I appreciate that.

12        THE COURT:  I think for the record here I

13  would like very much if each of the counsel would just

14  stand up and give us their name and with the Defendant.

15  So far we know that Defendants all represent the defense

16  here, Fleet, but with respect to the Plaintiffs' counsel,

17  what I would like to know from each of you is how many

18  clients do you have, how many in state court, federal

19  court, or not yet filed.  So I guess it might be quicker

20  if we start with the defense counsel if you have give me

21  your name.

22        MR. KOULETIS:  Nicholas Kouletsis, Pepper

23  Hamilton.

24        THE COURT:  Thank you.

25        MR. NEKRAWCHAK:  Good afternoon, your Honor.

1    I am John Nekrawchak with the Weinberg Wheeler law firm
2    in Atlanta.
3                    MS. STAUBS:  Good afternoon.  Ellen Staubs
4    with Pepper Hamilton in Philadelphia.  We represent
5    Fleet.
6                    THE COURT:  Thank you.
7                    MR. SNYDER:  Good afternoon, your Honor.
8    Mike Snyder from McDonald Hopkins.  We are here on behalf
9    of Fleet, and we are interim liaison counsel.
10                   THE COURT:  Thank you.
11                   MR. McKEE:  Your Honor, Dan Makee, and I am
12   with Mr. Snyder, McDonald Hopkins.
13                   THE COURT:  Okay.
14                   MR. GUNN:  Your Honor, we would request that
15   you go ahead and appoint them just as liaison counsel and
16   remove the interim.
17                   THE COURT:  I'm sorry.  Yes, I thought I did
18   that.  I'm sorry.
19                   Yes, we will appoint them as liaison counsel
20   for the Defendant.  So you are now permanent and not
21   interim.
22                   MR. SNYDER:  Thank you, your Honor.  Thank
23   you very much.
24                   THE COURT:  Now we get to the Plaintiffs.
25                   MR. TATE:  Well, Judge, Mark Tate, and I am

1    here, I've got John Baker who is a lawyer who works with

2    us and Susy Counsel who works with us as well.  We have

3    approximately 300 cases, and we have about 50 filed, all

4    in federal court, and they have all been transferred

5    over, and they are now in front of you, Judge.

6                    THE COURT:  Thank you very much.

7                    MR. SZERLAG:  Good afternoon, your Honor.

8    David Szerlag, Pritzker Olsen, Minneapolis.  I represent

9    approximately 50 Plaintiffs.  I have, I believe, 14 in

10   the federal court, and all of them are venued out of

11   Arizona at the present time, and I have none in state

12   court.

13                   MR. FOLEY:  Steve Foley of Foley and

14   Mansfield.  With me is Mike DeCourcy from my office and

15   Howard Wallach who is one of my partners in my Michigan

16   office.

17                   THE COURT:  Thank you.

18                   MR. FOLEY:  We have approximately 35 cases,

19   I believe, filed right now, and I believe six are under

20   consideration where we are going true the medical records

21   at this point.  All of them are in federal court except

22   for a number — there are two in state court in Michigan

23   and three pending in state court in California.

24                   And all the others have been — there is

25   actually one still in California Central District, which

1    has not yet been removed here.  I expect eventually it

2    will make its way here.  Otherwise, our cases are in

3    front of your Honor.

4                    THE COURT:  Thank you.

5                    MR. LASZLO:  Your Honor, Theodore Laszlo,

6    Laszlo and Associates, Boulder, Colorado, and Cleveland,

7    and we probably have 12 cases filed all in federal court

8    and another 14 to 20 under consideration and evaluation

9    right now.

10                   THE COURT:  Thank you.

11                   MR. DASKAL:  Good afternoon, your Honor.

12                   Bernard Daskal of Lynch, Daskal, Emery, and

13   with me is Scott Harford from my office.  We presently

14   have, I believe, four cases filed, all in New York State.

15   The one case that we had before your Honor has since been

16   resolved, and we have about approximately two dozen cases

17   under investigation presently.

18                   MR. SHKOLNIK:  Your Honor, Hunter Shkolnik

19   with the law firm of Rheingold, Valet.  My senior

20   partner, Paul Rheingold, is here as well.  We have 50

21   cases under investigation at the present time; one in

22   federal court being transferred here if it is not

23   already, and one in state court.

24                   THE COURT:  Thank you.

25                   MS. HARRINGTON:  Your Honor, I am Kathyrn

1  Harrington with Hollis, Wright, and Harrington from

2  Birmingham, Alabama.  We have five cases filed in federal

3  court in Alabama and 62 cases that we have under

4  consideration.

5           THE COURT:  Thank you.

6           MR. CORY:  Good afternoon, your Honor.  I am

7  Jerry Cory.  I am from Birmingham, Alabama, with the law

8  firm of Cory, Watson.  We have one case filed in federal

9  court and probably when it is all said and done we have

10  probably less than 30 cases.

11           THE COURT:  Thank you.

12           MR. O'ROURKE:  Excuse me.  Your Honor, my

13  name is Michael O'Rourke.  I am from Chicago.  We have

14  approximately 50 cases under investigation.  We have none

15  filed to date, and counsel I am working with include

16  Red Talber and Jack Kramer from Indiana, your Honor, in

17  the jury box, and we have 50 cases.

18           Thank you very much, your Honor.

19           THE COURT:  Thank you.  Anybody else?  In

20  the back of the room?

21           THE WITNESS:  Your Honor, my name is Arvin

22  Richards of Roetzel and Andress in Akron, Ohio, and I am

23  working with Mark Robchuk, and we have 2 cases we just

24  filed here in federal court.

25           THE COURT:  Okay.  Thank you.

1          MR. LANHAM:  Your Honor, this is Sam Lanham

2    on the phone — excuse me, your Honor.

3          THE COURT:  Yes.  Can you tell us what law

4    firm you are with and how many cases you have in federal

5    court or state court.

6          MR. LANHAM:  Yes.  Sam Lanham with the firm

7    of Lanham, Blackwell in Bangor, Maine; one case filed in

8    the District of Maine and transferred to your Court.

9          THE COURT:  All right.  Thank you.

10          MR. SHAW:  Yes, and also on the phone, your,

11    Honor, is Shaw.  I have got my own firm, Jeffrey O. Shaw

12    in Atlanta.

13          THE COURT:  And let's go ahead, how many

14    cases do you have?

15          MR. SHAW:  I have three cases transferred to

16    you, and I have about three others under investigation.

17          THE COURT:  All right.  Thank you.

18          MR. GOZA:  Your Honor, my name is Kirk Goza

19    with the law firm of Goza and Holland in Kansas City;

20    have a case filed in state court but I think is in the

21    final efforts of being resolved and then a case that had

22    been transferred to this Court recently, and I have about

23    25 cases under investigation.

24          THE COURT:  Thank you.

25          MR. SHUB:  Your Honor, Jonathan Chubbs,

1    Cedar, Weiss in Philadelphia.  If I can ask the Court to

2    skip over me, I am trying to get that information as we

3    speak to give you a report, so if I can go to the end.

4    of the line.

5              MR. ANDERSON:  Your Honor, Benjamin Anderson

6    from Anderson law offices here in Cleveland.  We have six

7    that are about to be transferred all in federal court,

8    and we have 32 under investigation.

9              THE COURT:  All right.

10             MR. RHEINGOLD:  Paul Rheingold, your Honor,

11   New York City.  My partner Mr. Shkolnik has explained our

12   firm.

13             THE COURT:  Thank you.  Anybody else?

14             MR. KRAMER:  Your Honor, Jack Kramer with

15   Red Taber, and our position has been previously

16   disclosed.

17             THE COURT:  Thank you.

18             MR. HARFORD:  Your Honor, Scott Harford,

19   from Lynch, Daskal, Emery, and Bernard Daskal has

20   disclosed our position.

21             THE COURT:  Thank you.

22             MR. DeCARLO:  Your Honor, Jeffrey DeCarlo.

23   I am a sole practitioner.  I have about 20 cases under

24   investigation; about 30 — approximately 30 cases filed

25   in federal court and another about 20 in state court.

1           THE COURT:  Thank you.

2           MR. SMITH:  Your Honor, Roger Smith with

3     Beasley, Allen; Montgomery, Alabama.  We have two cases

4     that are pending here in your Court and about 20 cases

5     that are in various stages of investigation.

6           THE COURT:  Thank you.

7           MR. ROSENFIELD:  Your Honor, Ron Rosenfield

8     from here in Cleveland.  I have one case that I am

9     co-counsel in that case with Mr. Laszlo and the Schaefer

10    case, she is a Cleveland resident.

11          THE COURT:  Thank you.

12          MR. KLEIN:  Your Honor, Jeff Klein, Laszlo &

13    Associates.  We have an office here in Cleveland, and Ted

14    stated our position on how many cases we have.

15          MR. M. LASZLO:  Your Honor, Michael Laszlo,

16    with the law firm of Laszlo & Associates.  Mr. Theodore

17    Laszlo has already explained our position.

18          THE COURT:  Thank you.

19          MR. HUGO:  Good afternoon, your Honor.  John

20    Hugo from Cooley, Manion & Jones.  We have about 20 cases

21    under investigation.

22          THE COURT:  Thank you.

23          MR. SENEGA:  Your Honor, Mike Senega from

24    London, Ontario, Canada.  I am here basically as an

25    observer here.  I am counsel in the pending class

1    proceeding there at the law firm of Ciskins & Colby, LLP.

2                   THE COURT:  Thank you.

3                   MR. BERTRUM:  Jay Scott Bertrum, Bertrum and

4    Graff, Kansas City office.  I know we that we filed 16

5    cases.  We have looked at approximately 80, but I believe

6    we will file only 16.

7                   MR. WALLACH:  Good afternoon, your Honor.

8    Howard Wallach from the Detroit office of Foley and

9    Mansfield, and Mr. Foley has stated our position.

10                  THE COURT:  Thank you.

11                  MR. MARTIN:  Good afternoon, Clay Martin,

12   from the law firm of Martin and Helms in Oswald, Alabama.

13   We have two 2 filed cases currently.  One is — there is

14   a motion to remand back to state court in Alabama, and I

15   have two more that we are likely to file soon and about a

16   dozen under investigation.

17                  MR. CLIMACO:  Your Honor, so the record is

18   complete, John Climaco.

19                  We have one case which we are local counsel.

20   We are about to file another case, will be filed in this

21   Court.  Dawn Chmielewski, who is also a nurse as well as

22   an attorney, is reviewing approximately 18 cases at this

23   time.  If they are filed, they will be filed right within

24   the MDL.

25                  Thank you.

1           MR. SHUB:  Your Honor, I will be happy to

2    report that I did get some numbers.  We have 25 cases in

3    federal court, and we are currently investigating several

4    dozen.  Jonathan Shub, S-h-u-b of Cedar Weiss LLP.

5           THE COURT:  That gives me some idea of the

6    enormity of this MDL.  Many of you have so many cases

7    filed and are investigating another 50 or another 25 or

8    another whatever.

9           Is there a rough percentage when you

10   investigate how many of them will go to trial and how

11   many of them would perhaps have other causes for their

12   injuries and whatever that wouldn't be appropriate; just

13   to try to get some kind of an idea of the enormity of

14   what the cases we are facing here.

15          MR. SZERLAG:  Your Honor, David Szerlag, and

16   for quite a while I was with Foley and Mansfield, and we

17   reviewed probably at one point close to 5,000 cases over

18   the last four years, and what we found out perhaps one in

19   about 10 of the cases we investigated turned out to be

20   related to the phosphate litigation.

21          THE COURT:  All right.

22          MR. FOLEY:  Steven Foley, your Honor.

23          You inquired how many will actually proceed

24   to trial.  In all likelihood, it will be very, very few.

25   In the course of the litigation to date, since it began

22

1    in December of 2004 — and Mr. Daskal filed the first

2    lawsuit — one case commenced trial and resolved three

3    days into trial with Mr. Gunn as lead for Defendant and

4    myself as lead for Plaintiffs in California.

5              Since then, both sides have worked very

6    hard to try to resolve the cases and avoid resolution

7    by the jury, and we are continuing that process, your

8    Honor.

9              MR. GUNN:  Could I say something about that,

10   your Honor?

11             THE COURT:  Yes.

12             MR. GUNN:  Because your question about how

13   many we are going to end up with is very important to

14   everybody.  As Mr. Foley said, we had a pretty good

15   process going settling cases, and in December, there was

16   a recall of the product, which has spurred a whole weight

17   of claims.

18             THE COURT:  Right.

19             MR. GUNN:  I would like to think that those

20   claims are all being reviewed by now.  It truly is our

21   goal to try and resolve all this litigation.  We have

22   finite resources, and we are unable to allocate

23   resources to claimants until we know how many we are

24   dealing with.

25             If we settle 600 and all of a sudden we have

1    200 we didn't know about, somebody is going to come up

2    short, and we would like to direct our efforts with the

3    Magistrate to identifying the colorable cases and

4    grouping them together and trying to find a way to

5    resolve this.

6              THE COURT:  Well, that's why I was — what I

7    was driving at as well, was to try to get some idea of

8    the magnitude of a number of the cases that you are going

9    to have to deal with, and that's where it does make it

10   important, that we do the preliminary discovery, and I

11   realize also some of these cases were almost ready to go

12   to trial or being settled when the MDL panel — I think

13   it was the Defendant that asked for this kind of

14   approach.

15             And so the quicker we can move along with

16   discovery and with knowing, you know, exactly or pretty

17   closely how many Plaintiffs you are going to have to deal

18   with, I'd appreciate that.

19             MR. GUNN:  In terms of discovery, there

20   might be a dispute about this, but we believe most of the

21   discovery has been done, and we would really like to

22   spend Fleet's resources on resolving cases as opposed to

23   reviewing documents and things.

24             THE COURT:  And I think we will make that

25   effort as well.

1      One other question:  Does anybody know of

2  any class action cases being contemplated so far?

3      MR. SHKOLNIK:  Your Honor, for the most

4  part — Hunter Shkolnik — for the most part, most of the

5  lawyers we have been in contact with — and we have been

6  speaking with many lawyers who have been advertising, who

7  have been representing Plaintiffs, no one has been

8  discussing a class action consumer case if that's what

9  the Court is considering, the consumer case.  Whether

10  someone will file one down the road, it is hard to say.

11      Unless the Defendants are aware of one from

12  the Plaintiffs that we have been talking to, that has not

13  been the avenue of approach people are thinking at this

14  point in time.

15      THE COURT:  Okay.

16      MR. CLIMACO:  Your Honor, I have come to

17  learn that there is — that Plaintiffs' counsel would

18  like to get to the spot that defense counsel is talking

19  about as soon as possible, but there is considerable work

20  that has to be done.

21      One of the things — and I think Mr. Cohen

22  could help us considerably — as I understand it, there

23  are a number of — (pause) — there are a substantial

24  number of documents where Defendants have claimed

25  privilege.

1          I understand there is a fairly extensive

2   privilege log.  Maybe that's one of the things we can

3   get moving on quickly because that will help move this

4   along.

5          MR. KOULETIS:  Your Honor, if I could

6   respond to that, the documents that have been identified

7   as privileged from the collection of some 900,000 pages

8   that have already been produced, in fact, were all

9   submitted to Judge Goodwin in Virginia in the Burke case,

10  and he went through, individually reviewed every single

11  one of them and ordered us to produce 12.  We think that

12  process is complete.

13          There is no purpose served in reinventing

14  the wheel over that.  Obviously, to the extent we produce

15  additional documents, there may be additional privilege

16  issues, but that would be from our perspective a colossal

17  waste of judicial resources as well as the parties'

18  resources.

19          MR. LASZLO:  Theodore Laszlo — and

20  Mr. Foley addressed this in our papers — but

21  Mr. Kouletis is not quite accurate about what Judge

22  Goodwin did in the Burke case.

23          Your Honor, you have the transcripts of what

24  actually did transpire in that event and in the Schaefer

25  case that is before you, but what Judge Goodwin did was

26

1    take a representative sample and trying to on the eve of

2    trial get through as many of the issues as he could.  So

3    to say he reviewed every single document is just

4    inaccurate.

5              MR. KOULETIS:  Well, with all due respect,

6    we were ordered to submit every document that we were

7    holding as privileged, and he reviewed them, and

8    during that hearing, he specifically identified four

9    documents having previously identified eight that he

10   ordered us to produce, and he represented on the record

11   that he had reviewed all the documents that we submitted

12   to him.

13             He had ordered us to submit all of the

14   documents we were withholding, which we did.  There were

15   four additional documents that he asked for some

16   additional briefing on, which he never ruled on, but

17   other than that very limited collection, he made it quite

18   clear he was quite satisfied with the review process that

19   had taken place.

20             MR. CLIMACO:  Your Honor, obviously,

21   disagreement, and that's why I suggest there is no one

22   better to get into that very quickly than Mr. Cohen.

23             MR. GUNN:  And, your Honor, we have no

24   objection to Mr. Cohen or you talking to Judge Goodwin in

25   West Virginia about that.

1          MR. LASZLO:  Nor do we.  That's why we

2     provided all the transcripts.

3          THE COURT:  All right.  Then we are getting

4     to my next — I think at this juncture I will turn over

5     to the parties to produce a case management order.  This

6     is going to depend on the Plaintiffs being able to get

7     their group together, and I have gone over with Mr. Cohen

8     some of the specifics of what I want to see in this case

9     management order, and I think that you can work it out

10    much more quickly than having both sides file different

11    opinions.

12          I did make clear to Mr. Cohen that I expect

13    this to have at the end a definite trial date.  It seems

14    to me all the years I have been on the bench the only way

15    to keep the lawyers from putting the case I am dealing

16    with back on a back shelf somewhere is when they know

17    there is a firm trial date by which everything has got to

18    be done.

19          So that is the main thing I want the parties

20    to come to an agreement on, and if there is no agreement,

21    then they can, both sides can tell me why they think they

22    can't get there that fast, and I will pick a date, but I

23    would like to have all of these things dealt with.

24          And I think that in that — in setting up

25    the case management order with dates, you can deal with

1    this issue of a tutorial.  It doesn't seem to me that

2    this case has the complicated chemistry or physics or

3    whatever else I have had to deal with in patent cases,

4    and that should be perhaps something very short from

5    experts on either side and then maybe a short hearing in

6    case — well, let the other side respond, or if you want

7    to cross-examine the other side's experts or just counter

8    with what one says with what the other says and perhaps

9    have a fairly short hearing in case I still have

10   questions.

11              But I don't want to see that taking up a lot

12   of time and a lot of expense because I don't think that

13   any of this is that complicated.  But I do want you to

14   deal with that when you are setting up the case

15   management order, and, David, you have a lot more

16   experience than I have.

17              Can we — let's see, you are going to come

18   back to me by August 31st with the Plaintiffs'

19   organization?

20              MR. CLIMACO:  Yes, we will, your Honor.

21              THE COURT:  And so then how much time do you

22   need after you have your group, your organization

23   together before the parties can meet with their executive

24   groups and produce a case management order for the Court

25   or at least one that gives me some disagreement where I

1     can —

2                    MR. CLIMACO:  Your Honor, I am anticipating

3     that if there is not an agreement we have reached as to

4     leadership and I believe and I have good faith that we

5     can do that, that the Court can issue an order almost

6     immediately after we say we couldn't do it.  So if you

7     will give me one moment, I will be able to answer the

8     question.

9                    THE COURT:  All right.  Confer with your

10    clients.

11                   MR. GUNN:  Billy Gunn.

12                   But when they have a designated lead

13    counsel, you know, within a day or two I would be glad to

14    discuss with them the format put forth for you what you

15    want.

16                   THE COURT:  Right.

17                   MR. GUNN:  And I think we will be able to

18    agree on that, and I agree while there are a number of

19    issues, it is not a complicated matter, just a lot to

20    assimilate.

21                   THE COURT:  Right.  And also what I see

22    covered is any kind of ADR possibilities that may work

23    for some of the Plaintiffs; may not work for a lot of

24    them but may work for some.

25                   MR. GUNN:  Once we know the population of

1    claimants, then we are prepared to engage in any type of

2    exercise that anybody wants.

3                THE COURT:  Right.  My thought usually has

4    been — I don't send things for ADR unless both sides are

5    interested or think it can do some good.  If you have one

6    side that absolutely is adamant, doesn't think it will

7    help, there is not a lot of point in having them get

8    involved, but I think you may have a lot of Plaintiffs

9    who would be interested, and I would like to see that

10   covered in the case management order as well.

11               MR. CLIMACO:  Your Honor, we would like to

12   see and we would like to submit that on Friday, September

13   11th.  We think that provides more than sufficient time

14   once leadership is appointed, and leadership could very

15   well be appointed much earlier because if an agreement

16   is reached —

17               THE COURT:  Well, if I don't hear anything

18   by August 31st, then — September 1st or 2nd, you are

19   going to have my appointment.

20               MR. CLIMACO:  So by September 11th —

21               THE COURT:  September 11th?

22               MR. GUNN:  It is an interesting date, your

23   Honor.

24               THE COURT:  All right.  Now, is there

25   anything else that I need to ever could today?

1            David, anything else?

2            DEPUTY CLERK KIRKPATRICK:  Judge, may I say

3   something?

4            For those of you who know Renee Schumitsh,

5   she is our MDL expert in the Clerk's office.  Mr. Bush,

6   you may want to take one of her cards, and she handles

7   all the incoming cases for the entire District on all the

8   MDLs.  She is in charge of thousands of cases.

9            She is very helpful for any kind of

10  questions you have regarding the clerk's office or

11  filings or if you have any technical filings that you may

12  encounter with our ECF program.

13           MR. TATE:  Is that her business card?  Can I

14  have that?

15           Thanks.

16           THE COURT:  Anybody have anything else?

17           MR. GUNN:  I would like to float an idea,

18  and that would be that once it is resolved who the

19  committee and lead counsel is, that perhaps each side

20  meet separately with Mr. Cohen and discuss issues and

21  see — and he can make an independent determination as

22  to, you know, where we are sort of in agreement and where

23  we are not, and it may speed up this whole process if

24  they are agreeable to each side meeting separately.

25           MR. CLIMACO:  I don't think we disagree; we

1    just want to get moving.  If that will move it, fine, but

2    I think a lot of that direction is best in my experience

3    coming from Mr. Cohen.

4                SPECIAL MASTER COHEN:  We will be in touch.

5                THE COURT:  All right.  I will have his

6    appointment order out in the next couple of days, too,

7    and you can be in touch with Mr. Cohen with the parties.

8    All right.

9                Is there anything anybody else wants to put

10   on the record that they haven't had a chance to do to

11   date?  I do appreciate for many of you making the effort

12   to be here, and we will move as quickly and as

13   efficiently as we can.

14                (Hearing concluded at 2:25 p.m.)

15                     - - - - - -

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2              I, George J. Staiduhar, Official Court

3      Reporter in and for the United States District Court,

4      for the Northern District of Ohio, Eastern Division,

5      do hereby certify that the foregoing is a true

6      and correct transcript of the proceedings herein.

7

8

9

10                         s/George J. Staiduhar
                          George J. Staiduhar,
11                         Official Court Reporter

12                         U.S. District Court
                          801 W. Superior Ave., Suite 7-184
13                         Cleveland, Ohio 44113
                          (216) 357-7128
14

15

16

17

18

19

20

21

22

23

24

25