09sp80000aaj-ord(Contingent Fees-1).wpd

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ORAL SODIUM PHOSPHATE | : | |
| SOLUTION-BASED PRODUCTS | : | |
| LIABILITY ACTION | : | **Case No. 1:09-SP-80000** |
| | : | **(MDL Docket No. 2066)** |
| | : | |
| THIS DOCUMENT RELATES TO | : | |
| ALL ACTIONS | : | **JUDGE POLSTER** |
| | : | |
| | : | **ORDER  REGARDING** |
| | : | **CONTINGENT  FEE** |
| | : | **AGREEMENTS** |

For the past several months, defendant Fleet and the Plaintiffs Executive Committee ("PEC")
have engaged in complex and strenuous settlement negotiations, sometimes with the assistance of
the Court and the Special Master.  On April 20, 2010, Fleet and the PEC reached agreement in
principle upon essential settlement terms and signed a "Term Sheet" memorializing their agreement.
The viability of the agreement between Fleet and the PEC, however, depended heavily upon
additional agreement to the Term Sheet by two insurance companies: National Union and Arch
(hereinafter, the "Insurers").[1]

Since April 20, 2010, Fleet, the PEC, and the Insurers have engaged in even more complex
and strenuous settlement negotiations, with even more involvement of the Court and the Special

---

[1]  A number of other insurance companies also provided coverage to Fleet for the OSPS
claims that are the subject of this MDL, but National Union and Arch provided by far the largest
share of coverage.

Master.  Finally, on June 14, 2010, the Insurers, Fleet, and the PEC came to a common agreement on all principal terms (hereinafter, "Common Agreement").  This Common Agreement includes the provisions contained in the original Term Sheet, plus a handful of modifications and amendments (which are memorialized in written communications with the Special Master).

The undersigned has reviewed thoroughly all of the terms and provisions of the Common Agreement contained in the memorializing documents.  This Common Agreement is an outline of a full settlement agreement, and it contains the critical terms (both financial and otherwise) upon which the PEC, Fleet, and the Insurers have agreed to end their disputes.  For example, the Common Agreement sets out: (1) the amount and timing of settlement payments that Fleet and the Insurers will make; (2) all material terms in the matrix ("Settlement Construct") that will be used to determine the amount that will be paid to each individual claimant who agrees to participate in the settlement and resolve his claims against Fleet ("Fleet OSPS Claimant"); (3) the rights and obligations of Fleet, the Insurers, and Fleet OSPS Claimants, and how certain remaining disputes among them will be resolved as the Settlement process unfolds; and (4) the offers made by other of Fleet's insurance companies that Fleet will accept, and those it will reject, and how unresolved insurance issues will be pursued.

While the parties understand they still must draft a more detailed document ("Master Settlement Agreement") that sets out all the particulars, the terms of the Common Agreement make clear they have settled their disputes in principal, subject to the clearing of certain contingencies that will not affect the contemplated range of values payable to settling Fleet OSPS Claimants (e.g., Fleet may withdraw from the settlement entirely if there is an excessive number of potential claimants

2

who choose not to participate).[2]

In light of this watershed circumstance, this Court now rules as follows.  **Any contingent fee agreement between an attorney and a Fleet OSPS Claimant that is entered into after June 14, 2010, is neither ethical nor permissible and may not be enforced.**  Accordingly, no person may take any steps to enforce any such agreement, and this Court will refer for ethics inquiry any attorney who does so.

The reasons for the Court's Order are as follows.  As explained in detail by another MDL Judge in this Court, after the parties reached their Common Agreement on June 14, 2010, "it was no longer the case that an attorney representing a [Fleet OSPS Claimant] would receive compensation *contingent* upon successful performance."  *In re Sulzer Hip Prosthesis and Knee Prosthesis Prods. Liab. Litig.*, 290 F.Supp.2d 840, 847 (N.D. Ohio 2003) (emphasis in original).  Rather, a Fleet OSPS Claimant who applies for benefits pursuant to the settlement provisions contained in the parties' Common Agreement will know beforehand both the *requirements* to obtain

---

[2]  This Court's review of the Common Agreement leaves it convinced that the settlement terms it contains are fair and reasonable, and the Settlement Construct pursuant to which claims will be evaluated for payment contains fair and appropriate compromises, in light of the factual and legal background pertaining to this litigation.  The Court anticipates issuing another Order addressing these issues in more detail.

those settlement benefits, and also the *amount* of those benefits.[3]  Use of contingent fee agreements

in these circumstances does not comport with ethical requirements.  To quote the *Sulzer* MDL court

at length:

> With respect to contingency fee arrangements, in particular, the Sixth Circuit Court of Appeals has noted that DR 2-106, and the related Ethical Consideration ("EC") 2-20, are "based largely upon Canon 13 of the old ABA Canons of Professional Ethics, adopted in 1908." *Krause v. Rhodes*, 640 F.2d at 219.  This Canon provided that a "contract for a contingent fee . . . should be reasonable under all the circumstances of the case, *including the risk and uncertainty of the compensation*, but should always be subject to the supervision of a court, as to its reasonableness." *Id.* (emphasis added).  This Canon highlights the obvious but critical characteristic of a contingent fee arrangement – the presence of risk.  That is why the attorney's fee is called "contingent." *See Committee on Legal Ethics of West Virginia State Bar v. Tatterson*, 352 S.E.2d 107, 113-14 (W.Va. 1986) ("Courts generally have insisted that a contingent fee be truly contingent.  The typically elevated contingent fee reflecting the risk to the attorney of receiving no fee will usually be permitted only if the representation indeed involves a significant degree of risk.").  And the reasonableness of an attorney's contingent fee depends directly on whether (or to what extent) real risk is present: "[w]hen there is virtually no risk and no uncertainty, contingent fees represent an improper measure of professional compensation." *Maryland Attorney Grievance Com'n v. Kemp*, 496 A.2d 672, 678 (Md. 1985) (quoting Formal Op. 76-1 from the Ethics Committee of the Maryland State Bar Association).

*Sulzer*, 290 F.Supp.2d at 850.

---

[3] It appears that the amount a given Fleet OSPS Claimant will receive may, in some cases, depend on the total number of such Claimants who apply for benefits and also the total amount of insurance proceeds available for the policy period applicable to the Claimant, which may not yet be entirely known.  And, the Insurers have the right to arbitrate the claims of a few Claimants, so that the Settlement Construct payment may not apply.  But each Claimant will still know, when he applies for settlement benefits: (1) that compensation is available; (2) what is the likely range of compensation amounts for which he is eligible; and (3) what administrative requirements he must meet to prove eligibility.  This circumstance is far different, of course, from the typical case where a contingent fee agreement reflects the risk that the client and attorney may pursue a claim for years and get nothing at all.  "A lawyer who entered into an attorney-client relationship with a plaintiff in this case after [the date the Common Agreement was reached] knew it was extremely unlikely that he would ever have to draft any documents, conduct any discovery, make any court appearances, file any pleadings, undertake any legal research, correspond with any defendant, or negotiate with any party" in order to receive settlement benefits. *Sulzer*, 290 F.Supp.2d at 853-54.

This is not to say an attorney who agrees to represent a Fleet OSPS Claimant, but who enters into a fee agreement with that Claimant after June 14, 2010, may not obtain any compensation at all. But the fee agreement must be limited to reasonable compensation for time spent, and not a percentage of the settlement benefits obtained.  *See Maryland Attorney Grievance Com'n v. Kemp*, 496 A.2d 672 (Md. 1985) ("filling out forms of a legal nature, simple though they may be, is certainly part of a lawyer's work, . . . [and accordingly] a reasonable charge based on the time actually spent in the preparation of the claim may ethically be charged.").[4]

As part of its continuing jurisdiction over this MDL and any settlement connected to it, this Court must ensure that fee arrangements between claimants who participate in any MDL settlement and their attorneys are reasonable and appropriate.  As the Fourth Circuit Court of Appeals explained, in the context of discussing a mass tort settlement:

> The court's authority to supervise members of the bar, its inherent powers to regulate attorney-client relations and compliance with ethical standards by attorneys, the equitable powers of the court under 11 U.S.C. §105(a), and the inherent equitable powers of the court, render the contingent fee contract of attorneys representing Dalkon Shield [claimants] subject to the supervision of this court to ensure that excessive or unreasonable fees are not charged or recovered by counsel.

*In re A.H. Robins Co., Inc.*, 86 F.3d 364, 370 (4th Cir. 1996), *cert. denied*, 519 U.S. 993 (1996) (quoting and affirming a district court order).  Indeed, this court "abuses its discretion" if it allows an attorney appearing before it to collect a contingent fee "without carefully considering the factors

---

[4]  *See also* Brickman, *Contingency Fee Abuses, Ethical Mandates, and the Disciplinary System: The Case Against Case-By-Case Enforcement*, 53 Wash. & Lee L. Rev. 1339, 1358 n.68 (1996); ABA Center for Professional Responsibility, *Annotated Model Rules of Professional Conduct* 58 (4th ed. 1999) (citing cases where "courts have disciplined lawyers for using contingent-fee agreements in cases presenting minimal risk of nonrecovery").

relevant to fair compensation."  *Allen v. United States*, 606 F.2d 432, 435 (4th Cir. 1979).[5]

Accordingly, this MDL Court now makes clear that any contingent fee agreement between an attorney and a "Fleet OSPS Claimant" (i.e., a claimant who agrees to participate in the parties' settlement and resolve his claims against Fleet) that is entered into after June 14, 2010 is neither ethical nor permissible and may not be enforced.

**IT IS SO ORDERED.**

/s/ Dan Aaron Polster_____
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**DATED:** June 15, 2010

---

[5]  *See also Krause v. Rhodes*, 640 F.2d 214, 218 (6th Cir. 1981) ("[a] federal district court judge has broad equity power to supervise the collection of attorney's fees under contingent fee contracts"); *McKenzie Construction, Inc. v. Maynard*, 758 F.2d 97, 101 (3rd Cir. 1985) ("court's have a special concern to supervise contingent attorney fee agreements"); *Allen*, 606 F.2d at 435 (4th Cir. 1979) ("[t]he district courts' supervisory jurisdiction over contingent fee contracts for services rendered in cases before them is well-established"); *Dunn v. H. K. Porter Co., Inc.*, 602 F.2d 1105, 1108 (3rd Cir. 1979) ("contingency agreements are of special concern to the courts and are not to be enforced on the same basis as are ordinary commercial contracts").